IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ASH EQUIPMENT CO., INC., ET AL.,

        Plaintiffs,                              11cv0204

    v.                                   **ELECTRONICALLY FILED**

RAMPART HYDRO SERVICES, INC.,
ET AL.,

        Defendants.

**MEMORANDUM OPINION**

Before the Court is Defendants' Partial Motion to Dismiss Plaintiffs' Complaint pursuant to Fed.R.Civ. P. 12(b)(1), 12(b)(6), and 12(b)(7). Doc. no. 10. Plaintiffs, Ash Equipment Company, Inc., d/b/a American Hydro, Hydrotechnologies, Inc. i/d/b/a/ HTNE Hydrodemolition Services, LLC, and Premium Hydro Solutions, brought this action against Defendants, Rampart Hydro Services, Inc. and Rampart Hydro Services, L.P., and in its Complaint alleged Defendants violated the Lanham Act, 15 U.S.C. § 1125 (a) and (d) (Counts I and II) as well as Pennsylvania's service mark infringement and unfair competition laws. See doc. no. 1.

The gravamen of Plaintiffs' Complaint alleges that Defendants, who are Plaintiffs' business competitors, registered domain names in bad faith in order to gain access to, divert, attract and profit from Plaintiffs' already registered marks. Plaintiffs seek injunctive and monetary relief for Defendants' alleged acts of: (1) cybersquatting in violation of 15 U.S.C. § 1125(d)); (2) false designation in violation of 15 U.S.C. §1125(a); and (3) service mark infringement and unfair competition in violation of Pennsylvania common law.

Plaintiffs filed a timely Response to Defendants' Partial Motion to Dismiss (doc. no. 14), and for the reasons that follow, Defendants' motion shall be denied.

# I. Standard of Review

In considering a Rule 12(b)(6) motion, federal courts require notice pleading, as opposed to the heightened standard of fact pleading. Federal Rule of Civil Procedure 8(a)(2) requires only " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.' " Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

To survive a motion to dismiss, plaintiff must allege sufficient facts that, if accepted as true, state "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 at 570). A claim has facial plausibility when a plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant may be liable for the misconduct alleged. Id. at 1949. However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.' " Iqbal, 129 S.Ct. at 1950 (quoting Twombly, 550 U.S. at 555). In deciding a motion to dismiss, a court must determine whether the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." PA Prison Soc. v. Cortes, 622 F.3d 215, 233 (3d Cir. 2010), citing Iqbal, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009).

As explained succinctly by the United States Courts of Appeals for the Third Circuit:

> Pursuant to Ashcroft v. Iqbal, [citation omitted], district courts must conduct a two-part analysis when presented with a motion to dismiss. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009). "First, the factual and legal elements of a claim should be separated." Id. "The District Court must accept all of the complaint's well-pleaded

facts as true, but may disregard any legal conclusions." Id. at 210-11. "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoting Iqbal, 129 S.Ct. at 1950).

Edwards v. A.H. Cornell and Son, Inc., 610 F.3d 217, 219 (3d Cir. 2010).

When determining whether a plaintiff has met the second part of the analysis and presented facts sufficient to show a "plausible claim for relief," the Court must consider the specific nature of the claim presented and the facts pled to substantiate that claim. For example, in Fowler, a case predicated upon a violation of the Rehabilitation Act, the Court of Appeals determined that "[t]he complaint pleads how, when, and where [the defendant] allegedly discriminated against Fowler." 578 F.3d at 212. The Court, while noting that the Complaint was "not as rich with detail as some might prefer," it the "how, when and where" provided by the plaintiff sufficient grounds to establish plausibility. Id. at 211-212.

The Court of Appeals in Guirguis v. Movers Specialty Services, Inc., 346 Fed.Appx. 774, 776 (3d Cir. 2009), a civil rights and Title VII case, affirmed a decision to dismiss a plaintiff's complaint because the plaintiff failed to plead facts explaining why he believed his national origin was the basis for the termination of his employment.

Therefore, when deciding a motion to dismiss under Rule 12(b)(6), the district court should apply the following rules. The facts alleged in the complaint, but not the legal conclusions, must be taken as true and all reasonable inferences must be drawn in favor of plaintiff. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555. The Court may not dismiss a complaint merely because it appears unlikely or improbable that plaintiff can prove the facts alleged or will ultimately prevail on the merits. Id. at 556, 563 n.8. Instead, the Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Id. at 556. In short, the motion to dismiss should not be granted if plaintiff

3

alleges facts which could, if established at trial, entitle him to relief. Id. at 563 n.8. Generally speaking, a complaint that provides adequate facts to establish "how, when, where, and why" will survive a motion to dismiss. See Fowler and Guirguis, supra.

Based upon this standard, this Court has reviewed Defendants' Partial Motion to Dismiss Plaintiffs' Complaint.

## II. Factual Background

The following relevant facts are presumed to be true solely for the purposes of deciding Defendants' Partial Motion to Dismiss.

Plaintiffs and Defendants are business competitors. Plaintiffs allege that their names (specifically, "American Hydro," Hydro Technologies," "HTNE," and "Premium Hydro"), are well known, have been used to distinguish themselves and their services from others in the industry, and Defendants knew this. Id. at ¶¶ 13-24. In addition, Plaintiffs allege that they use commercial websites to advertise themselves and have registered the following domain names to that end: americanhydro.net (hereinafter "americanhydro"); hydrotechnologies.com (hereinafter "hydrotechnologies"); and sites.google.com/site/premiumhydrosolutions (hereinafter "premiumhydrosolutions"). Id. at ¶¶ 16, 20, and 24.

Plaintiffs allege that Defendants operate a commercial website at "www.rampart-hydro.com." Id. at ¶ 25. Plaintiffs' lawsuit centers on the fact that Defendants registered the following domain names: (1) americanhydro.mobi; (2) americanhydrodemolition.com; (3) hydrodemolitiontechnologies.com; (4) premiumhydro.com; (5) premuimhydrodemolition.com; (6) premiumhydro.mobi; and (7) htne.mobi. Doc. no. 1 at ¶ 28. Plaintiffs assert that with respect to the first five domain names above, a user will be

automatically redirected to Defendants' website, "www.rampart-hydro.com." Id. at ¶ 29. Plaintiffs claim that their customers and potential customers who were attempting to locate Plaintiffs were, at a minimum, confused, and at the most, rendered unable to locate Plaintiffs as a result of the actions taken by Defendants. Id. at ¶¶ 30-32. Plaintiffs claim they lost customers and business as a result of individuals being diverted away from their websites and their marks have been confused with Defendant or otherwise diluted. Id. at ¶¶ 48-49.

Defendants' Partial Motion to Dismiss seeks dismissal of Plaintiffs' Complaint with respect to three of the above seven domain names: (1) americanhydrodemolition.com; (2) hydrodemolitiontechnologies.com and (3) premuimhydrodemolition.com. For the reasons that follow, this Court will deny the Defendants' Motion.

### III. Discussion

**A. Defendants' Motion to Dismiss Count I, Cybersquatting (15 U.S.C. § 1125(d))**

"[C]ybersquatting is the act of registering, in bad faith and to garner profit, on the internet a domain name so similar to a distinctive mark that it is confusing." Green v. Fornario, 486 F.3d 100, 103 n. 5 (3d Cir.2007) (citing Shields v. Zuccarini, 254 F.3d 476 (3d Cir. 2001)); see also 15 U.S.C. § 1125(d)(1)(A). Title 15 of the United States Code, Section 1125(d)(1)(A) reads:

> (d) Cyberpiracy prevention
>
> (1)
> (A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person
>
> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

(ii) registers, traffics in, or uses a domain name that-

 (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

 (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

 (III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

Therefore, pursuant to Rule 12(b)(6), this Court must determine whether Plaintiffs averred sufficient factual allegations to suggest that: (1) the three terms used by Plaintiffs – "americanhydro;" "hydrotechnologies;" and "premiumhydrosolutions" – are distinctive marks[1]; (2) three of the seven terms registered by Defendants and challenged by Defendants in this Partial Motion to Dismiss – americanhydrodemolition; hydrodemolitiontechnologies; and premuimhydrodemolition – are so identical to the marks so as to cause confusion; (3) Defendants

---

[1] "The term 'mark' includes any trademark, service mark, collective mark, or certification mark. 15 U.S.C. § 1127.

 The term "trademark" includes any word, name, symbol, or device, or any combination thereof--
  (1) used by a person, or
  (2) which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter,
to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.

 The term "service mark" means any word, name, symbol, or device, or any combination thereof--
  (1) used by a person, or
  (2) which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter,
to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown. Titles, character names, and other distinctive features of radio or television programs may be registered as service marks notwithstanding that they, or the programs, may advertise the goods of the sponsor.

Id.

registered these three names – americanhydrodemolition; hydrodemolitiontechnologies; and premuimhydrodemolition – in bad faith to garner profit; and, (4) Defendants are the registrant of americanhydrodemolition.com, hydrodemolitiontechnologies.com, and premuimhydrodemolition.com, or are the registrant's authorized licensee. See Shields v. Zuccarini, 254 F.3d 476 (3d Cir.2001).

In order for a trademark to be eligible for legal protection, the mark must be distinct. Carnivale v. Staub Design, LLC, 700 F.Supp.2d 660, 664 (D.Del. 2010); see also, 2 McCarthy on Trademarks and Unfair Competition § 11.2 (4th ed.2010). Many courts have recognized a four-category "scale of distinctiveness" that separates terms into the following categories: (1) arbitrary or fanciful, (2) suggestive, (3) descriptive, and (4) generic. See e.g., Carnivale, supra (citing Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4 (2d Cir. 1976); E.T. Browne Drug Co. v. Cococare Products, Inc., 538 F.3d 185, 191 (3d Cir. 2008); A.J. Canfield Co. v. Honickman, 808 F.2d 291, 296 (3d Cir.1986); and Zurco Inc. v. Sloan Valve Co., 2011 WL 1230154, *4-5 (W.D.Pa. decided March 31, 2011).

As the United States Court of Appeals for the Third Circuit has explained:

> Arbitrary or fanciful marks use terms that neither describe nor suggest anything about the product; they "bear no logical or suggestive relation to the actual characteristics of the goods." A.J. Canfield, 808 F.2d at 296 (citation omitted). "Suggestive marks require consumer 'imagination, thought, or perception' to determine what the product is." Id. at 297. Descriptive terms "forthwith convey[ ] an immediate idea of the ingredients, qualities or characteristics of the goods," while generic marks "function as the common descriptive name of a product class." Id. Generic marks are those that "function as the common descriptive name of a product class." Id. at 296. In order to qualify for Lanham Act protection, a mark must either be suggestive, arbitrary, or fanciful, or must be descriptive with a demonstration of secondary meaning. See id. at 297. Generic marks receive no protection; indeed, they are not "trademarks" at all. See id. at 305.

A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 221-222 (3d Cir. 2000). The stronger the mark, the stronger the protection. Id. at 222.

When determining whether one party is entitled to injunctive relief from an alleged infringer, the United States Court of Appeals for the Third Circuit has considered the factors outlined in 15 U.S.C. § 1125(c)(1) [2] to help determine whether a mark is truly "distinctive" for the purposes of Section 1125(d). Shields, 254 F.3d at 482. After considering the factors outlined in section 1125(c), the Court of Appeals considered the mark "Joe Cartoon" distinct when: (1) the owner used the term "Joe Cartoon" for a period of fifteen years; (2) the owner had used the domain name joecartoon.com to advertise and sell products for a period of approximately four years; (3) the "Joe Cartoon" products were nationally advertised and sold through multiple media outlets; and, (4) the joecartoon.com website received more than 700,000 visits per month. Id. at 482-83.

In this case, Defendants contend that two terms ("hydrodemolition" and "technology") are generic terms which fall at the lowest end of the "scale of distinctiveness" and therefore, are not entitled to any protection whatsoever. See Defendants' Brief, doc. no. 11, pp. 6-9.

---

[2] Section 1125(c) has been amended and it is Subsection (c)(2) that now sets forth the following factors to use when determining whether a mark is distinctive:

> . . . [A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:
>
> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
>
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
>
> (iii) The extent of actual recognition of the mark.
>
> (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(2).

Defendants then argue that because these two terms are generic, the three domain names at issue ("americanhydrodemolition.com," "hydrodemolitiontechnologies.com," and "premiumhydrodemolition.com") are generic terms enhanced by descriptive terms such as "American" and "premium," and thus, are not entitled to protection. Defendants rely in part on A.J. Canfield Co. in support of their position.

In A.J. Canfield Co., the Court of Appeals for the Third Circuit determined that the term "chocolate fudge" as applied to "diet soda" was descriptive. In so doing, however, the Appeals Court noted that "Courts and commentators have recognized the difficulties of distinguishing between suggestive, descriptive, and generic marks." Id. at 296. The Appeals Court also pointed out that "a designation's level of inherent distinctiveness is a question of fact." Id. at 307, n. 24. See also E.T. Browne Drug Co., 538 F.3d at 192 (whether "Cococare Butter Formula" is generic or descriptive, and whether that term has acquired secondary meaning, are questions of fact).

Plaintiffs' Complaint alleges that their marks are distinctive (see doc. no. 1, ¶¶13-14, 17-18, 21-22) and have acquired secondary meaning within their markets. Id. at ¶¶ 40, 66. Plaintiffs' Complaint also alleges the three domain names registered by Defendants, currently at issue, are confusingly similar to their marks. Id. at ¶¶ 31-32. Plaintiffs' Complaint concludes that Defendants' "purpose" in registering these domain names was to redirect Plaintiffs' customers and potential customers to Defendants' website thereby inducing them to retain Defendants' services. Id. at ¶¶ 29-30. The Complaint makes the requisite factual assertions, which, if proven, establish a cause of action for cybersquatting (*i.e.* Defendants' registering, in bad faith and to garner profit, on the internet a domain name so similar to Plaintiffs' distinctive mark that it is confusing).

In addition, this Court notes that in A.J. Canfield Co., the case upon which Defendants' rely, the District Court denied Plaintiffs' request for a preliminary injunction after "receiving evidence and hearing arguments." 808 F.3d at 294. The Court further notes that in E.T. Browne, the Court of Appeals reviewed a summary judgment decision reached by the District Court. Given the stage of the proceedings in each of those cases, the Appeals Court was able to evaluate the facts of those cases based on the evidence proffered.

Here, given the juncture of the legal proceedings, this Court cannot as a matter of law, dismiss Plaintiffs' cybersquatting cause of action because the threshold issue (*i.e.* whether the three marks at issue are distinctive), turns on the level of inherent distinctiveness which is a question of fact. Accordingly, based upon the facts set forth in Plaintiffs' Complaint, and accepting them as true solely for the purposes of deciding this Motion to Dismiss, this Court finds that Plaintiffs have made the allegations necessary to assert a valid cause of action for cybersquatting and the Defendants' Motion for Partial Dismissal on this basis shall be denied.

**B. Defendants' Motion to Dismiss Count II, False Designation (15 U.S.C. § 1125(a))[3]**

Section 43 of the Lanham Act aims "to protect persons engaged in interstate commerce against unfair competition caused by false or misleading representations or advertising about goods, services, or commercial activities." Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 131 F.3d 353, 357 (3d Cir.1997), aff'd, 527 U.S. 666, (1999). To serve that aim, the Act imposes civil liability "for the use of a false or misleading description of fact, or false or misleading representation of fact in connection with the sale of goods in interstate

---

[3] Pennsylvania's common law tort of unfair competition has the same standard as § 43(a). Institute for Scientific Info. v. Gordon and Breach, 743 F.Supp. 369, 373 (E.D. Pa.1990), vacated on other grounds, 931 F.2d 1002 (3d Cir.), cert. den., 502 U.S. 909 (1991). Accordingly, the following discussion addresses both federal and state claims.

commerce." Sandoz Pharm. Corp. v. Richardson-Vicks, Inc., 902 F.2d 222, 227 (3d Cir.1990) (internal quotation marks omitted).

This portion of the Lanham Act, as codified, creates civil liability for any person who:

(1) . . . in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . .

15 U.S.C. § 1125(a)(1).

Although the statute provides for two separate causes of action – false or confusing designation of origin, sponsorship, or approval, and false advertisement – Plaintiffs in the instant matter alleged a cause of action for false designation. Defendants now seek to dismiss that cause of action as to the three domain names referenced above: "americanhydrodemolition.com," "hydrodemolitiontechnologies.com," and "premiumhydrodemolition.com."

Thus, to establish a claim under section (a)(1)(A) for false designation, Plaintiffs must show that Defendants: (1) used a word, term, name, symbol, or device, or any combination of these, (2) in commerce, (3) in connection with goods, (4) which designation is likely to cause confusion, mistake, or deception as to (5) the origin, sponsorship, or approval of Defendants' goods, and (6) Plaintiffs have been or are likely to be damaged by these acts. See, First Keystone Fed. Sav. Bank v. First Keystone Mortgage, Inc., 923 F.Supp. 693, 707 (E.D.Pa.1996).

Plaintiffs' Complaint contains these requisite allegations, as this Court has described in greater detail above, which, if proven true, meet all of the elements necessary to support a cause of action for false designation.

## IV. Conclusion

Based on the foregoing, Defendants' Motion for Partial Dismissal shall be denied. An appropriate Order follows.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc:     All Registered ECF Counsel and Parties